UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 10-20753-CR-SEITZ

UNITED STATES OF AMERICA,

    Plaintiff

v.

VELDORA ARTHUR,

    Defendant
_____/

## ORDER GRANTING GOVERNMENT'S MOTION IN LIMINE RE POLYGRAPH EVIDENCE

This matter came before the Court on the Government's Motion in Limine to Preclude Polygraph Evidence [DE-112]. Defendant seeks to introduce the expert opinion testimony of Dr. John J. Palmatier, Credibility Consultant, to the effect that the Defendant was truthful when she answered his three questions regarding her knowledge of any illegality in the paperwork submitted for the condominium purchases at issue. [DE-112-1 at 3] The Court has considered the Motion and the Defendant's Response [DE-128] and will grant the motion because even assuming the threshold requirements of Rule 608(a) Federal Rules of Evidence are satisfied,[1] the proposed opinion must be excluded under Federal Rules of Evidence 608(b), 704(b), 702, and, alternatively, 403.

---

[1] Fed.R.Evid. 608 (a)(2) provides that evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked. Thus, such evidence can only be considered if the Defendant testifies and an attack has been made on her character for truthfulness. Ordinarily, this does not include impeachment through evidence of bias, contradiction or prior inconsistent statement. *United States v. Danehy*, 680 F.2d 1311, 1314 (11th Cir. 1982)(direct attacks that do not call into question a witness' character for truthfulness, but merely her lack of veracity while testifying, do not justify responsive character evidence under Rule 608).

BACKGROUND

On February 3, 2011, the Defendant was charged with both conspiracy to commit and substantive counts of wire and mail fraud in connection with her role as an alleged "straw buyer" in a mortgage-fraud scheme. Seven months before that, on July 30, 2010, Defendant underwent Dr. Palmatier's polygraph exam without notifying the Government of or inviting it to attend the exam's administration. Nearly a year later, on May 9, 2011, Defendant gave the Government a copy of Dr. Palmatier's report, without any underlying charts Dr. Palmatier used or produced, and invited the Government to conduct its own polygraph examination. The Government has declined Defendant's invitation. The Defendant seeks to have Dr. Palmatier corroborate her trial testimony that she lacked any knowledge of and participation in the fraud. The Government will not stipulate to the admission of the Dr. Palmatier's opinion that the Defendant was truthful when he tested her.

Dr. Palmatier's page and a half report has four parts. The first part, titled "Issue at Examination," has two paragraphs. The first states the purpose of the exam, namely, to determine if the Defendant is telling the truth when she denies knowing that any of her activities related to the 2006 purchase of two condominiums were illegal. The second paragraph has eight sentences summarizing the Defendant's version of her involvement, her efforts to investigate the facts and her approach to the FBI.

The report's second part, titled "Results/Conclusions," in total says:

> Veldora Arthur was given a polygraph examination on this date, with four tests administered. After analysis of the polygrams and all other relevant information, it is my opinion that there were no significant and consistent psycho-physiological reactions consistent with deception when Ms. Arthur answered the relevant questions found below. Accordingly, it is my professional opinion that VELDORA ARTHUR WAS TRUTHFUL when she answered these questions.

2

In the Report's third part, under the heading of "Relevant Questions," is a list of the three questions Dr. Palmatier asked:

> 1. Before signing the documents, did you know all of the financial information that was being entered on the HUD Applications? Answer — NO
> 2. Did you have any idea that there may be something illegal with the paper work for the purchase of either condo? Answer – NO
> 3. Are you telling the truth, you had no idea of anything illegal in signing the HUD application documents for either condo? Answer – YES

The final part of the Report, titled "Additional Information," consists of two sentences. The first sentence sets forth Dr. Palmatier's observation that the Defendant displayed the appropriate affect and was open and candid in responding to any question posed in his talking and questioning of her. The final sentence states that Dr. Palmatier would be happy to talk to the US Attorney's office about the examination results. Thereafter is Dr. Palmatier's signature.

Defendant maintains she underwent the exam before she was charged in an effort to demonstrate she was telling the truth regarding her lack of knowledge and participation in the two allegedly fraudulent HUD submissions. The two submissions respectively occurred on February 7, 2006 and a month later on March 6, 2006. In January 2007, Defendant contacted the Government to report Co-Defendant Fagan's fraud, and made efforts to follow-up with the Government in 2007 and 2008. In June, 2010, the FBI contacted the Defendant for an interview. She had the polygraph exam on July 30, 2010 and was debriefed by the FBI at the US Attorney's Office on August 4, 2010. She did not hear further from the FBI or US Attorney's Office. On October 14, 2010, Co-Defendants Fagan, Silas and Johnson were indicted. On February 3, 2011, the Government filed a superceding indictment adding the Defendant to the case.

DISCUSSION

A. Legal Standard

Pursuant to *United States v. Piccinonna*, 885 F.2d 1529 (11th Cir. 1989), polygraph evidence is no longer *per se* inadmissible in the Eleventh Circuit. It can be admitted in two circumstances. The first, which is not applicable here, is where the parties stipulate in advance to the circumstances of the test and as to the scope of its admissibility. The second situation, which is applicable here, is where it is to be used to impeach or corroborate the testimony of a trial witness under conditions of adequate notice and as limited by Federal Rules of Evidence 608, 702 and 403. *Id.* at 1536-1537. Thus, as the evidentiary gatekeeper, a court must determine whether it is admissible under Rule 608 and evaluate whether the proposed opinion meets the *Daubert* requirements of Rules 702 and 403. Under a *Daubert* analysis, a court may exclude polygraph expert testimony because: (1) the polygraph examiner's qualifications are unacceptable; (2) the test procedure was unfairly prejudicial or the test was poorly administered; or (3) the questions were irrelevant or improper. *Id.* Because the testimony's substance goes to whether the Defendant had the mental state, namely knowledge, which is an element of the crime charged, the Court must also consider the evidence in light of Fed.R.Evid. 704(b).

B. Analysis

Even assuming the Government's cross-examination of the Defendant would attack her character for truthfulness, the Court must exclude the testimony of Dr. Palmatier because of Fed.R.Evid. 608(b), 704(b), 702 and 403. The Defendant did not respond to the first two grounds which the Government addressed in its motion. In response to the *Daubert* analysis, Defendant asserts that she has satisfied the *Piccinonna* requirements because she gave the Government a

reasonable opportunity to have its own polygraph examination of the Defendant and that the Eleventh Circuit authorities that the Government relies on are distinguishable. The Court must disagree.

First, the testimony does not constitute testimony through opinion or reputation of the Defendant's character for truthfulness. Instead, the testimony seeks to introduce evidence of a specific instance of three prior out-of-court statements made on July 30, 2010, and Dr. Palmatier's opinion that the Defendant was truthful as to those three statements. Thus, the proposed testimony is evidence of a specific instance of truthfulness. However, Rule 608(b) prohibits extrinsic evidence of specific instances of the conduct of a witness for the purpose of attacking or supporting the witness' character for truthfulness. The rule further provides such evidence may only be inquired into on cross-examination; it cannot come in on direct examination.

Second, Dr. Palmatier's testimony is to the effect that at the time the Defendant engaged in the acts she is charged with, she had no knowledge that it was illegal. Such testimony constitutes testimony with respect to the mental state or condition of a defendant in a criminal case. Fed.R.Evid. 704(b) not only prohibits such testimony, it clearly states the ultimate issue of a defendant's mental state is for the "trier of fact alone." *See United States v. Booth*, 309 F.3d 566, 573 (9th Cir. 2002)(relating to polygraph evidence); *see also United States v. DiDomenico*, 985 F.2d 1159, 1164-65(2d Cir. 1993)(compiling cases as to other types of expert testimony as to mental state). In the Defendant's case, a critical issue is whether she had the requisite knowledge to commit the crimes charged. Part of the evidence that Defendant seeks to elicit from Dr. Palmatier is two of his three questions and her answers, namely:

> 2. Did you have any idea that there may be something illegal with the paper work for the purchase of either condo? Answer – NO
> 3. Are you telling the truth, you had no idea of anything illegal in signing the HUD application documents for either condo? Answer – YES

While the questions use the words "did you have any idea" and "you had no idea," rather than "know," they go directly to the issue of Defendant's knowledge or mental state and not to conduct. Moreover, even though they wear the thin veil of opinion as to Defendant's truthfulness when answering these questions about her knowledge, rather than Dr. Palmatier's blunt statement as a psychologist that in his opinion she did not have knowledge, it is too close to the type of testimony Rule 704(b) prohibits. In *United States v. Alvarez*, 837 F.2d 1024, 1030-31(11th Cir. 1988), the Eleventh Circuit commented on its Rule 403 concerns as to the undue weight a jury may give to expert testimony of the mental state of a criminal defendant. The testimony in *Alvarez* that the appellate court admitted, however, was not directed to a specific defendant but spoke in general terms as to what unknowing participants would do. Here the proposed testimony has crossed the line and cannot be admitted.

Even if the Defendant could overcome these two grounds for excluding Dr. Palmatier's testimony, the Defendant has not met her burden under Rule 702 and *Daubert*[2] to establish that the opinion is reliable which is a key predicate for admissibility. *McClain v. Metabolife International, Inc.* 401 F.3d 1233, 1238 n.2 (11th Cir.l 2005). Given the controversy as to the reliability of polygraph evidence in general, which the Supreme Court noted in *United States v. Scheffer*, 523 U.S. 303, 312 (1998), it is incumbent upon a party seeking to admit such evidence to provide information to evaluate how the test was administered, the type of test technique used, the means and standards

---

[2]*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

used to control the test operation. *See, United States v. Gilliard*, 133 F.3d 809, 813-14 (11th Cir. 1998)(discussing the type of specifics needed to evaluate a polygraph test). The Defendant's response reflects that she is familiar with the *Gilliard* discussion of test evaluation. Yet, she has not proffered anything to make an evaluation. She has not provided any information regarding the actual administration of the test and no video tape was taken of the test administration which might have assisted any analysis of the test administration. Moreover, the Defendant has only provided the test administrator's three sentence conclusion without any information as to how he arrived at his conclusion including identifying the four tests allegedly administered, the polygrams purportedly analyzed or even identified "all other relevant information" that provides the basis of Dr. Palmatier's opinion. There is also no information given for the framing of the three specific questions, their sequence or word choice. In short, the Defendant has not provided anything whereby this Court can conclude there is anything scientific about Dr. Palmatier's opinion much less analyze what methodology he used to reach his conclusions so as to determine whether they are sufficiently reliable to be admitted. At present, Dr. Palmetier's report simply parrots the Defendant's version of the events and her lack of knowledge with the added mantle of an expert's credentials. Such testimony would constitute impermissible bolstering of another witness's testimony.

Finally, Rule 403 requires the exclusion of Dr. Palmatier's testimony. Dr. Palmatier, who describes himself as a credibility consultant, met the Defendant on one occasion, spoke with her and asked questions about her involvement in the charged crime. Based on the record before the Court, he has merely assessed credibility which is what juries do every day. His testimony, thus, would not be helpful to the jury because the issue of a witness's credibility is one that lay persons are more than competent to handle without the need of expert testimony. For these reasons, it is

ORDERED that the Government's Motion in Limine to Preclude Polygraph Evidence [DE-112] is GRANTED.  Dr. Palmatier may not testify at trial.

DONE AND ORDERED in Miami, Florida this 29² day of August, 2011.

_____
PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE


Copies to: Counsel of Record